THE DIRECTOR GENERAL OF RAILROADS, defendant below, plaintiff in error, *vs.* TILGHMAN JOHNSTON and WALTER BLACKSON, trustees under the last will and testament of William Gouverneur Ramsey, deceased, plaintiffs below, defendants in error.

1. RAILROADS—CAUSE OF FIRE PROVABLE BY CIRCUMSTANTIAL EVIDENCE.

That a fire caused by a spark from a passing locomotive may be proved by circumstantial evidence.

2. RAILROADS—CAUSE OF FIRE HELD QUESTION FOR JURY.

Evidence *held* sufficient to go to the jury on the question whether the fire which destroyed plaintiffs' barn was caused by a spark from one of defendant's locomotives.

3. RAILROADS—NEGLIGENCE IN SETTING FIRE BY SPARKS MUST BE PROVED.

In an action for damages by fire, it is not sufficient for plaintiff to prove that a spark from defendant's locomotive set the fire, but he must show by other evidence additional facts from which the jury may find negligence.

4. RAILROADS—NEGLIGENCE IN EQUIPMENT OR OPERATION OF LOCOMOTIVE SETTING FIRE HELD QUESTION FOR JURY.

In an action for the burning of a barn 150 feet from defendant's right of way, *held,* that the court was justified in submitting to the jury the question of defendant's negligence, either in the equipment or the operation of the engine while drawing a train around a curve and upgrade.

5. TRIAL—INSTRUCTION THAT RAILROAD HAD RIGHT TO OPERATE ROAD BY STEAM PROPERLY REFUSED AS NOT IN ISSUE.

In an action for the destruction of a barn by fire set by sparks from a locomotive, the refusal of an instruction that defendant had a right to operate its railroad by engines propelled by steam generated by fire was not error; there being no issue as to such right.

6. TRIAL—INSTRUCTION AS TO PROVING NEGLIGENCE BY CIRCUMSTANTIAL EVIDENCE HELD SUSTAINED BY EVIDENCE.

In an action for the destruction of a barn by fire set by sparks from a locomotive, an instruction that defendant's negligence might be shown by either direct or circumstantial evidence was not erroneous, where, aside from the admissibility of evidence of other fires, there was evidence of other circumstances from which the jury might have inferred negligence in the equipment or operation of defendant's engine.

7. APPEAL AND ERROR—REFUSAL TO DISMISS ARRAY OF ADDITIONAL JURORS NOT ERROR, WHERE RECORD DID NOT SHOW HOW DRAWN.

Under *Rev. Code* 1915, § 4266, providing that if an insufficient number of jurors appear, or if the panel be quashed, the court may award a tales de circumstantibus, or make such other order as it may deem expedient for filling up the requisite number of jurors, the refusal of the court to dismiss an array of additional jurors because drawn and summoned contrary to the statutes was not error; the record not disclosing how they were drawn and summoned, and the authority of the court to keep in attendance the requisite number of jurors being very broad.

8. Railroads—Evidence of other Fires Admissible, When Identity of Engine is Disputed.

In an action for damages by fire set by sparks from a locomotive, evidence of other fires is admissible when the identity of the engine is disputed.

9. Railroads—Identity of Engine Setting Fire Held Disputed, Permitting Evidence of Other Fires.

In an action for the destruction of a barn by fire set by sparks from a locomotive, where there was evidence that an engine passed about 2 hours and another about 15 minutes before the fire was discovered, the latter of which, defendant's evidence showed, was equipped with sufficient spark arresters, the origin of the fire was a disputed fact, in determining which the jury might find the fire to have been started from some other engine than that so equipped, so that evidence of other fires was admissible; the identity of the engine being in dispute.

10. Appeal and Error—Testimony As to Cinders Found on Site of Burned Barn more Than Year After Fire Set by Sparks, Though Inadmissible and Without Probative Force, Not Reversible Error.

In an action for the destruction of a barn by fire set by sparks from a locomotive, testimony of plaintiff's witness that more than a year after the fire he was at the site of the burned barn, and noted that the greater part thereof was covered with freshly fallen snow, on top of which cinders were lying from the railroad tracks to 20 feet beyond the site, though without probative force, and not admissible on the theory that evidence of other fires is admissible, was not reversible error.

(*June* 14, 1921)

Curtis, Chancellor, Rice and Heisel, Associate Judges, sitting.

*John W. Huxley* for plaintiff in error.

*Robert H. Richards* for defendants in error.

Supreme Court, January Term, 1921.

Error to Superior Court, New Castle County, No— October term, 1920.

See case below, 7 *Boyce*, 565, 109 *Atl.* 581.

Action by Tilghman Johnston et al., trustees, etc., against the Director General of Railroads. Verdict for plaintiffs. Judgment entered on verdict affirmed.

This was an action brought by the plaintiffs below to recover damages for the loss of their barn and contents, alleged to have been caused by the negligence of the defendant. The negligence

Statement.

charged in the courts of the declaration, not adandoned, and the pertinent facts proved, are stated in the opinion of the court.

## ASSIGNMENTS OF ERROR.

The the court below erred:

1.    In refusing to instruct the jury at the close of all the testimony taken in the case to find a verdict for the defendant in accordance with the defendant's first prayer.

2.    In not charging the jury, as requested in the third prayer of the defendant:

"That even if the plaintiffs established the fact the fire was caused by a spark from defendant's engine, still if they failed to show any satisfactory proof that the firing and destruction of the barn resulted from the carelessness or negligence of the defendant they could not recover in this action."

—or such modification of the language of said prayer as would embody the proposition of law therein contained without charging upon the facts in the case before them.

3. In refusing to instruct the jury, as requested in the fourth prayer of the defendant:

"That the defendant is not answerable under all circumstances or at all events, but is only answerable for their own fault; that is, for want of due care, skill, or diligence, in the transaction of their business and in the use of their engines in it to prevent such accidents."

4.    In refusing to instruct the jury, as requested in the sixth prayer of the defendant:

"That the defendant had an unquestionable right to operate the railroad by engines propelled by steam generated by fire."

5.    In refusing to instruct the jury, as requested in the seventh prayer of defendant:

"That if the defendant used due care and caution in the running of its engines, and yet unfortunately the barn of the plaintiff was set on fire by sparks emitted from its engine and destroyed, the plaintiffs would not be entitled to recover for the loss sustained by them, because the defendant under such circumstances would be without fault."

6.    In refusing to instruct the jury, as requested in the eighth prayer of the defendant:

"If the defendant had in use on its locomotives fire appliances and machinery then in general use for the prevention of the escape of sparks and coals of fire, and the plaintiffs do not show that it has been negligent in other particulars, there would be no liability and the plaintiffs cannot recover in this action."

7. In refusing to instruct the jury, as requested in the ninth prayer of defendant:

"A railroad company is not bound to adopt any particular kind of appliances or machinery for the prevention of fires, and it cannot be held guilty of negligence for failing to adopt a different kind or pattern of appliances than that which it has adopted, if it has exercised reasonable care in the selection, and the latter is approved and in general use, and if the company has taken every precaution and secured approved machinery in general use it has done all that lies in its power to do, consistent with the operation of the road, and is therefore not liable for a purely accidental fire."

8. In refusing to instruct the jury, as requested in the eleventh prayer of the defendant:

"Where the presumption of negligent construction or operation arises from the fact that the fire was set by defendant's locomotive, when the presumption thus arising is repelled and rebutted, by proof or proper construction and use of proper appliances and careful management and operation, the plaintiffs cannot recover without producing proof of actual negligence or want of ordinary care."

9. In refusing to instruct the jury, as requested in the twelfth prayer of the defendant:

"The fact that a fire occurs is no evidence of itself of negligence on the part of the defendant."

10. In instructing the jury as follows:

"Whether the alleged firing of plaintiff's property resulted from the alleged acts of negligence of the defendant company, or any of them, may be shown by either direct or circumstantial evidence."

11. In refusing the motion of the defendant to dismiss the array of jurors drawn especially to try said cause.

12. Abandoned.

13. The court below admitted improper testimony on behalf of the plaintiffs, in that in the direct examination of Walter Washington the court admitted the following testimony.

Q. What can you say with regard to other fires which have occurred along the right of way?
A. Well, I seen—.

Statement.

Mr. Huxley (interrupting the witness). I object. He has identified a train passing 15 minutes before this fire, and, unless he can identify other fires caused by the engine equipped such as this engine, it is inadmissible.

CONRAD, J. We overrule the objection.

(Exception noted for the defendant.)

A. Several of them.

Q. During the period of four years?

A. Yes, sir.

Q. How many of them?

A. Well, I would say about 10; maybe more; I couldn't say.

Q. What has caused those fires, if you know?

A. Well, right after a freight passed they caught on fire.

(Objected to be Mr. Huxley, counsel for the defendant. Objection overruled.)

A. I saw a few along there.

Q. Have you ever seen any fires near the barn?

A. Yes, sir. I helped to put out one right near the barn.

Q. How close to the barn was the one you helped to put out?

A. It was within five or six feet of the barn.

Q. When did that happen?

A. I guess it was around three years ago.

Q. Do you know what caused the fire?

A. I couldn't say for sure.

Q. Did you see anything that might have caused it?

A. No, sir. I didn't see anything around there.

Q. Do you know whether a train had passed before that fire was seen?

A. There was a train passed about an hour, or maybe more, before.

Q. These other fires you speak of —do you know what caused those fires?

A. No; I couldn't say for sure.

Q. Did you see anything that might have caused them?

A. No, sir.

Q. Were those fires on the right of way; that is, between the fences or on the fields, or where?

A. I seen one in the field, and helped to put it out.

Q. On Mr. Wilson's side?

A. No; on our side; in the cornfield.

Q. About how far did that start from the right of way?

A. I would say about 30 feet.

Q. It did not start on the railroad proper but started over in the field?

A. Over in the field.

Q. Was there anybody in the field at that time?

A. I didn't see no one.

Q. Where did the fire start in the field?

A. In the grass. Burnt the grass and the corn shocks.

Q. Have you seen these freight trains passing along there at night?

A. Yes, sir.

(Objected to by Mr. Huxley, counsel for the defendant. Objection overruled.)

(Exception noted for defendant.)

A. Well, I seen a lot of sparks flying from them.

Q. Most of the trains that pass there at night, a few of them?

A. Most all I seen. Of course, I don't see them all when they pass there, but when I am out I can see them.

14.   That the court below erred in that in the direct examination of Jacob T. Hedrick, a witness produced on the part of the plaintiffs, it admitted the following evidence:

Q.   During the time you have worked on the farm, have you ever noticed any fires on the farm, caused by sparks from locomotives running along there?
Mr. Huxley:  I want to offer the same objection.
CONRAD, J.   We overrule the objection.
(Exception noted for the defendant.)
A.   I couldn't say whether it was on account of the engines or not.  I have seen fires along the right of way there and in the fields.
Q.   How many fires have you seen in the fields during the time you have worked there?
A.   Well, I helped to put out three in my recollection.
Q.   And where did you see those fires?
A.   They would start along the fence along the right of way, and run over into the filed.
Q.   Just prior to the time when these fires started, did you ever see locomotives running along there?
A.   Yes, sir.
Q.   Did these fires, as a matter of fact, start very shortly after the trains went along?
A.   Yes, sir.
Q.   When you saw these fires, was there anybody else around in the neighborhood?
A.   I didn't see anybody, no, sir.
Q.   Was there anything you saw which might have caused the fire other than the locomotive?
A.   No,  sir.
Q.   You say you saw some fires in the fields?
A.   Yes, sir.
Q.   How far from the railroad track?
A.   I seen one in the cornfield which run out in the field I suppose about 30 feet from the fence along the track, and the track, of course, is back from the fence about twenty feet, I judge;  something like that.

15.   That the court below erred in that in the direct examination of Eby W. Cordrey, a witness produced on the part of the plaintiffs, it admitted the following evidence:

Q.   During the time you worked on this place, have you seen fires on the farm along this right of way?
A.   Yes, sir.
Mr. Huxley:  I want to offer the same objection.
CONRAD, J.   The objection is overruled.
(Exception noted for the defendant.)
Q.   About how many fires have you noticed since you have been working there?
A.   I suppose ten or a dozen.
Q.   Where have you seen these fires?
A.   Well, I have seen them different places;  along the railroad, in the field, and on the right of way, and in the field, and the farm.

Statement.

Q.   Do you know what caused the fires?
A.   No, sir; I couldn't swear what caused them. I know they all happened shortly after a train went by.
Q.   They all happened shortly after a train went by?
A.   Yes, sir.
Q.   Did you see anything in the fields or around the place where the fire occurred which might have caused the fire, other than the sparks from the locomotives?
A.   No, sir.

16.   That the court below erred, in that in the direct examination of James W. Umflet, a witness produced on the part of the plaintiffs, it admitted the following evidence:

Q.   Do you know whether there have been any other fires along there in recent years?
A.   Yes, sir.
Q.   How many have you seen?
Mr. Huxley: I want to offer the same objection.
CONRAD, J.   The objection is overruled.
(Exception noted for the defendant.)
Q.   How many have you seen?
A.   Oh, about eight, I suppose.
Q.   In how many years?
A.   I seen them the year I was there. I lived there at the farm.
Q.   What year did you live on the farm?
A.   I think it was about 1917.
Q.   About 1919?
A.   Nineteen seventeen.
Q.   About a year before the fire?
A.   Yes, sir; about a year before the fire.
Q.   And you had on the farm how many fires?
A.   Something about eight, I think.
Q.   What caused these fires, if you know?
A.   Well, I don't know. Some of them was on the railroad side of the fence, and some of them were in the the field. It was right after the train.
Q.   Did they happen shortly after the train had passed?
A.   Yes, sir; right after the train passed.
Q.   Have you ever noticed these trains passing at night?
A.   Yes, sir.
Q.   What about sparks?
A.   There is plenty of them.
Q.   How often have you noticed that, Mr. Umflet?
A.   I used to watch them every night.
Q.   You used to watch them every night?
A.   Yes, sir.
Q.   Can you give me any idea of how many fires have occurred in the field during that time?
A.   There was one in the oat field, and I think there was two in the lot by the meadow; and the rest I can't tell you a thing about. I seen one or two along the railroad. Some of them were burning in the field, and some of them on the railroad side; but it was burning in the hedge grass along the oat field first, some of them.

Q.  Where did these fires start?
A.  Some of them on the right of way, but I couldn't tell you; and I seen two or three that started just inside the field.
Q.  Started inside?
A.  Yes, sir.

17.  That the court below erred, in that, in the direct examination of Charles Bartells, a witness produced on the part of the plaintiffs, it admitted the following evidence:

Q.  Have you ever seen any fires along the right of way near where this barn was located?
A.  Yes, sir.
Q.  Did they happen after a train had passed?
A.  Well, I couldn't say that. I would just be going by the railroad and see them. That is all.
Q.  Have you ever seen sparks coming out from any of the locomotives coming along there?
A.  I have at nighttime; yes, sir.
Q.  How often?
A.  Quite often.

18.  That the court below erred, in that in the direct examination of Henry Anderson, a witness produced on the part of the plaintiffs, it admitted the following evidence:

Q.  What attracted your attention, if anything, on the side of the barn?
(Objected to by Mr. Huxley, counsel for the defendant.)
CONRAD, J.  We will admit this.
(Exception noted for the defendant.)
A.  I noted that the greater part of the side of the barn was covered with freshly fallen snow. The surface was white, with the exception of cinders, which were lying on the top of the snow.
Mr. Huxley: I ask that be stricken out, as far as the cinders are concerned.
CONRAD, J.  We refuse to strike it out.
(Exception noted for the defendant.)
Q.  What, in general, did you notice with regard to cinders on the site of the barn and between the barn and the track?
Mr. Huxley: I object to all of this general line of testimony.
(Question not pressed.)
Q.  What about the velocity of the wind at the time you were there?
A.  At the time I was there, there was a rather—I would call it a moderate breeze, blowing, a moderate breeze.
CONRAD, J.  Your objection is overruled.
(Exception noted for the defendant.)
Q.  What did you observe with regard to cinders on the site and between the site and the track?
A.  There were more cinders near the railroad track than there were upon the side or between the site of the barn and the track; that is, they increased as you got nearer to the railroad track.
Q.  What was the result of your examination on the other side of the track?

A.    A very careful examination on the other side of the track showed no cinders whatever on the top of the snow.

Q.    What are the sizes of the cinders that you found?

A.    They varied in sizes. A great number of them were a sixteenth of an inch or larger; some considerably larger than a sixteenth of an inch.

Q.    These cinders were lying right in the freshly fallen snow?

A.    I beg your pardon. I want to change that statement. It should be an eighth. A sixteenth is wrong. It should have been an eighth.

Q.    How far did these cinders extend beyond the barn site?

A.    We found cinders as much as 20 feet beyond the barn site; away from the railroad.

Q.    Then how far did you find cinders from the track itself?

A.    That would make a total of approximately 200 feet from the railroad track to the last cinders found there, in any appreciable quantity.

Q.    Was there any other means around there that these cinders might have come from except from the railroad track?

A.    Nothing that I could conceive of.

Q.    What can you say with regard to their appearance?

A.    They had apparently fallen there. They were on the top of the snow.

19.    That the court below erred in overruling the motion of defendant's counsel to strike out the testimony of Henry Anderson, a witness produced on the part of the plaintiffs, so far as said testimony related to cinders being found around plaintiffs' barn.

20.    That the court below erred in that, in the direct examination of John D. Macleay, it admitted the following evidence:

Q.    Do you know anything about other fires which have occurred on this farm caused by sparks from locomotives?

Mr. Huxley: I object. The same objection.

CONRAD, J.   The objection is overruled.

(Exception noted for the defendant.)

A.    Yes. We had several fires there, possibly eight or a dozen.

Q.    Where have you had these fires?

A.    Along the track side, on both sides of the track, in both fields.

Q.    Did you have any fires in the fields?

A.    Yes; some occurred thirty or forty feet out from the fence, and some of them started on the right of way.

Q.    Do you know what caused those fires?

A.    Well, there was a train invariably passed through at that time, yes.

Q.    Was there anything else you know of which might have caused those fires?

A.    Nothing that I could see—any other cause than the train.

Q.    Have you ever had any other fires near the barn?

A.    We had two or three right in the same yard. One that Mr. Bartells saved for us within six feet of the barn, when I got there.

21.    Abandoned.

### ARGUMENT FOR PLAINTIFF IN ERROR.

The court should have instructed the jury to return a verdict for the defendant, as requested in the first prayer of the defendant. There is no evidence in the case showing, or tending to show, that the defendant was negligent either in the operation of its engine or in equipping its engine with the approved appliances to prevent the escape of fire and sparks. These are the two acts of negligence alleged in plaintiffs' declaration and relied on by them.

Under the allegations of negligence as in the present case, it is not sufficient for the plantiffs to prove simply that a fire was caused by sparks emitted from defendant's engine, but that said sparks were emitted, first, either by reason of improper or insufficient equipment of said engine; or, second, that said sparks were emitted on account of negligent and improper operation of said engine. There is no testimony that the fire to the property of plaintiffs below was caused by sparks from defendant's engine, or that the equipment of defendant's engine was insufficient, defective or out of order. On the contrary, there is the positive testimony of the inspectors, who inspected the equipment of said engine the evening before and the morning after the fire .that the equipment of said engine was perfect in every way.

It became the duty of the plantiffs below, in order to recover in this action, to introduce some testimony as to negligent operation or management of said engine. This they not only failed to do, but there is the uncontradicted testimony of three witnessess that defendant's engine was not emitting sparks on the night of the fire as it passed the property of the plaintiffs below, and there is the positive testimony that the locomotive of the defendant on the night of the fire was operated in a careful and skillful manner, while passing property of plaintiffs below. There was absolutely no evidence of negligence in the case to be submitted to the jury, and the court below erred in refusing to instruct the jury, as requested in the first prayer of the defendant below. *Jefferis v. P. W. &. B. R. R.* 3 *Houst.* 455.

The instructions asked for and refused, the basis of the second, third, fourth and fifth assignments of error, were taken al-

most verbatim from the case of *Jefferis v. P. W. &. B. R. R. Co.*, 3 *Houst.* 455, the settled law of this state since 1869, never having been reversed.

It is respectfully submitted that while the court below charged the jury as to part of the law of this state in cases like the one at bar, it did not fully state the law, and the jury, in considering the evidence in connection with the law as laid down by the court, might very readily have found:

1.    That if plaintiffs' barn was set on fire by sparks from defendant's locomotive, defendant would be liable under any circumstances.

2.    That the mere fact that a spark from defendant's locomotive ignited plaintiffs' barn, that fact alone would constitute negligence on the part of the defendant for which it would be liable.

3.    That the defendant would be liable for any fires caused under any circumstances.

4.    That if plaintiffs' barn was set on fire by sparks from defendant's locomotive, through an unfortunate and unavoidable accident, nevertheless, the defendant would be liable.

5.    That a railroad company in operating its trains becomes liable for all fires occasioned by said operation; or, in other words, that a railroad company operating its engines, properly equipped with the latest known devices and operated by competent and skillful servants, and operated in a competent and skillful manner, would be liable for any fires occasioned by a spark from one of its locomotives.

It is respectfully submitted that error prejudicial to the defendant below was committed by the court in refusing to charge as prayed for by defendant below.

Considering the sixth assignment of error, it is the well-settled rule of law that a railroad company, in the operation of its railroad, with locomotive engines propelled by steam generated by fire, and drawing its train over its road in the usual and ordinary manner, is not liable for the damage done by the mere unavoidable escape of fire from the engine. *St. Louis, etc., R. Co. v. Hoover*, 3 *Kan. App.* 577, 43 *Pac.* 854.

Statement.

The evidence definitely establishes that the only engine of defendant which could have caused the fire was engine 1044, and that it was equipped with a Seiders improved spark arrester, the latest model in that device, which was inspected on the evening before and the morning after the fire, and was found to be perfect in every way. This testimony disproves the allegations of negligence contained in the fifth, seventh and eighth counts of the declaration, so that, in order to recover, it became necessary for the plaintiffs below, by affirmative proof, to sustain the allegations contained in the first and second counts, to wit, that the locomotive was negligently, carelessly and unskilfully operated. It is respectfully submitted that error prejudicial to the defendant below was committed by the court below in refusing to charge as requested in the eighth prayer of the defendant below. *Philadelphia & R. R. Co. v. Schultz*, 93 *Pa.* 341; *Texas, etc., R. Co. v. Levi & Bro.*, 59 *Tex.* 674, 13 *American & English R. R. Cas.* 464.

The instruction prayed for in defendant's ninth prayer, the refusal of which is the basis of the seventh assignment of error, is the well-settled law of nearly every state in the Union. *Vallaster v. Atl. City R. Co.*, 72 *N. J. Law*, 334, 62 *Atl.* 993; *Hoff v. West Jersey R. Co.*, 45 *N. J. Law*, 201; *Menominee, etc., Co. v. Mill., etc., R. Co.*, 91 *Wis.* 447, 65 *N. W.* 176; *Louisville, etc. R. Co. v. Reese*, 85 *Ala.* 497, 5 *South.* 283, 7 *Am. St. Rep.* 66; *Jennings v. Penna. Co.*, 93 *Pa.* 337; *St. Louis, etc., Ry. Co. v. Dawson*, 77 *Ark.* 434, 92 *S. W.* 27, 28.

The refusal of the court below to instruct the jury, as requested in the eleventh prayer of the defendant, is the basis of the eighth assignment of error.

It is well-settled law that where the presumption of negligent construction or operation arose from the fact that a fire was set by the defendant's locomotive, when the presumption thus arising is repelled and rebutted by proof of proper construction and use of proper appliances and careful management and operation, the plaintiff cannot recover without producing proof of actual negligence or want of ordinary care.

If the plaintiff sees fit to rest solely upon the presumption of

law, which arises from the setting of the fire, and the railroad company successfully rebuts that presumption by clear and satisfactory evidence showing that the engine that·is alleged to have caused the fire was of proper and modern construction and equipped with approved devices and appliances for arresting sparks and preventing the escape of fire and was in good repair and was operated and managed with prudence and ordinary care and diligence, the defendant is entitled to an instructed verdict in its favor. *Woodward v. Chicago M. & St. P. Ry. Co.*, 145 *Fed.* 577, 75 *C. C. A.* 591; *Patton v. Tex. & Pac. Ry. Co.*, 179 *U. S.* 658, 21 *Sup. Ct.* 275, 45 *L. Ed.* 361; *Randall v. B. & O. R. Co.*, 109 *U. S.* 478, 3 *Sup Ct.* 322, 27 *L. Ed.* 1003.

The statutes of Minnesota, North Dakota and South Dakota were referred to, and it was argued that these statutes were passed because it was difficult for claimants of damages caused by fires set by railroad companies to establish in the first instance that defendant's locomotives were defective, or that they were negligent in their operation. The purpose of the legislation was simply to change the burden of proof; to raise a presumption against defendant from the scattering coals or sparks by fire, by a locomotive that was either defective, or which might have been avoided by the exercise of reasonable care in its operation. But, even then, it is always a question of fact for the court at the close of the evidence whether or not the presumption of negligence arising from these statutes has been overcome by the evidence of the care exercised by the defendant. *Rosen v. Chicago G. W. Ry. Co.*, 26 *C. C. A.* 534, 83 *Fed.* 300; *Karsen v. Railroad Co.*, 29 *Minn.* 12, 11 *N. W.* 122; *Daly v. Railway Co.*, 43 *Minn.* 319, 45 *N. W.* 611; *Smith v. Railroad Co.*, 3 *N. D.* 17, 53 *N. W.* 173; *McTavish v. Great Northern Ry. Co.*, 8 *N. D.* 333, 79 *N. W.* 443; *Spaulding v. Railraod Co.*, 30 *Wis.* 110, 11 *Am. Rep.* 550; *Id.*, 33 *Wis.* 582; *Huber v. Railway Co.*, 6 *Dak.* 392, 43 *N. W.* 819; *Koontz v. Navigation Co.*, 20 *Or.* 3, 23 *Pac.* 820; *Railroad Co. v. Talbot*, 78 *Ky.* 621; *Railroad Co. v. Packwood*, 7 *Am. & Eng. Ry. Cas.* 584; *Louisville & N. R. Co. v. Reese*, 85 *Ala.* 497, 5 *South.* 283, 7 *Am. St. Rep.* 66; *Smith v. Northern P. R. Co.*, 3 *N. D.* 17, 53 *N. W.* 173.

We have no such statute in Delaware, and the proposition of law prayed for by the defendant in its eleventh prayer is peculiarly applicable to the case at bar, in view of the evidence in the case.

The refusal of the court below to instruct the jury as requested in defendant's twelfth prayer is the basis for the ninth assignment of error. The law in nearly all of the states, as laid down in *Jefferis v. P. W. & B. R. R. Co.*, 3 *Houst.* 455, except where there are statutes making such fires prima facie evidence of negligence, is that, in the absence of proof of such negligence on the part of the defendant, a railroad company is not liable for such fires. Indeed our own courts in personal injury cases have repeatedly held that no presumptioun of negligence arises from the fact that there was an accident. *Igle v. People's Ry. Co.*, 5 *Boyce*, 379, 93 *Atl.* 666; *Freeman v. W. & P. Traction Co.*, 3 *Boyce*, 111, 80 *Atl.* 1001; *Butler v. Wil. City Ry. Co.*, 2 *Boyce*, 262, 78 *Atl.* 871.

It is respectfully submitted that the court below erred in its instructions to the jury, which is the basis of the tenth assignment of error, for the reason that the only circumstantial evidence in the case was evidence of other fires at other times by other locomotives, all of which evidence was admitted by the court below, against the objection of the defendant. The admissibility of such evidence will be treated at length under assignments of error 13, 14, 15, 16, 17 and 20.

The basis for the eleventh assignment of error is next shown. At the beginning of the trial counsel for defendant below filed a motion in writing that the court dismiss the array of jurors drawn as additional jurors to try this case, which motion was refused and exception noted for the defendant. This case was first tried at the March term of court, and resulted in a disagreement of the jury on March 9, 1920. Defendant's counsel asked for a continuance, but the court set down the case for trial on the following Tuesday, March 23d. As there were not sufficient jurors remaining in the panel, exclusive of those who sat at the first trial, to complete the jury at the second trial, the court below by written order directed the jury commissioners to draw nine additional

jurors, from which together with the remainder of the panel from which the jury in the first trial were drawn to select the jury.[1]

The jury commissioners under the order of the court, drew said additional jurors apportioned as follows: Four from the first district, one from the second, one from the third, one from the fourth, one from the fifth and one from the twelfth. The names of these additional jurors were unknown to defendant's counsel until the case was called for trial, and, indeed, there were five jurors from the regular panel who had been challenged in the trial of the first cause.

It is respectfully submitted that such order of the court is unauthorized by *section* 4257, *Rev. Code*, 1915, or any other statute in relation to drawing juries. *Section* 4266, *Rev. Code*, provides in case of deficiency of jurors that the court may award a tales de circumstantibus. The defendant was entitled, if additional jurors were drawn, to have a full panel from which to select the jury. *Clinton v. Englebrecht*, 13 *Wall.* 434, 20 *L. Ed.* 659.

Assignments of error 13, 14, 15, 16, 17 and 20, based on the admission and rejection of certain testimony, will be argued together.

The undisputed evidence in the case goes to show that the only engine of defendant which could by any possibility have caused the fire was engine 1044, and clearly shows that said engine was equipped with a Seiders improved spark arrester, the latest known type of that device, and that the same was in good order and repair. The testimony admitted against objection was all limited to other fires in the locality at other times by other engines of the defendant, and there was not any proof that said engines were similarly equipped and operated as was engine 1044 on the night of the fire.

It is respectfully submitted that this evidence was wrongfully admitted and could only tend to prejudice the minds of the jury

---

[1]Note.—On March 18, 1920, nine jurors from the districts above named had been excused and would not be in attendance upon the court for the residue of the period for which they had been drawn, for reasons satisfactory to the court, and the court directed other jurors to be drawn from said districts to fill the panel.—Reporter.

Statement.

and was of no probative value. *Lesser Cotton Co. et al. v. St. Louis, I. M. & S. Ry. Co.*, 114 *Fed.* 133, 52 *C. C. A.* 95; *Henderson v. Philadelphia & R. R. Co.*, 144 *Pa.* 461, 22 *Atl.* 851, 16 *L. R. A.* 299, 27 *Am. St. Rep.* 652; *Jacksonville, T. & K. W. R. Co. v. Peninsular Land Trans. & Mfg. Co.*, 27 *Fla.* 1; 157, 9 *South.* 661, 17 *L. R. A.* 52, 65; *Shelly v. Philadelphia & R. Ry. Co.*, 211 *Pa.* 160, 60 *Atl.* 581; *St. Louis, etc., R. Co. v. Jones*, 59 *Ark.* 105, 26 *S. W.* 595; *Crissey & Fowler Lumber Co. v. Denver, etc., R. R. Co.*, 17 *Colo. App.* 275, 68 *Pac.* 670; *Akins v. Ga., etc., R. Co.*, 111 *Ga.* 815, 35 *S. E.* 671; *Ill. Cen. R. Co. v. Bailey*, 222 *Ill.* 480, 78 *N. E.* 833; *Cleveland, etc., R. Co. v. Loos*, 38 *Ind. App.* 1, 77 *N. E.* 948; *Missouri, etc. R. Co. v. Wilder*, 3 *Ind. T.* 85, 53 *S. W.* 490; *Sprague v. Atchison etc., R. Co.*, 70 *Kan.* 359, 78 *Pac.* 828; *Ireland v. Cinn., etc., R. Co.*, 79 *Mich.* 163, 44 *N. W.* 426; *Bradley v. Chicago, etc., R. Co.*, 90 *Neb.* 28, 132 *N. W.* 725; *Hygienic Plate Ice Mfg. Co. v. Raleigh, etc., R. Co.*, 126 *N. C.* 799, 36 *S. E.* 279; *Penn. Co. v. Rossman*, 13 *Ohio Cir. Ct. R.* 111, 7 *Ohio Cir. Dec.* 119; *Nussbaum & Scharff v. Trinity & Brazos Valley Ry. Co. (Tex. Civ. App.* 1912), 149 *S. W.* 1083; *Norfolk, etc., R. Co. v. Briggs*, 103 *Va.* 105, 48 *S. E.* 521; *Allard v. Chicago, etc., R. Co.*, 73 *Wis.* 165, 40 *N. W.* 685.

Assignments of error 18 and 19, based on the testimony of Henry Anderson, will be argued together.

All the evidence of the witness Anderson, which was admitted against the objection of the defendant, was irrelevant, immaterial and inadmissible. The fire in question occurred on October 9, 1918 and Anderson did not visit the scene of the fire until "the Sunday before last, the 14th," so that he did not view the scene of the fire until one year and five months after the fire had occurred. He was not asked, as an expert, any hypothetical questions as to what, in his opinion based, on the testimony of the witnesses as to the actual facts on the night of the fire, caused the fire, or whether or not, in his opinion, such fire was caused by sparks from defendant's locomotive, but simply to testify to the physical facts and conditions at the time he was there. He testified, against the objection of the defendant, to finding cinders on top of the snow

Statement.

on the site of the barn, and also to the fact that there were more cinders near the railroad track than there were upon the site, or between the barn and the railroad track, and that he found cinders as much as 20 feet beyond the site of the barn away from the rail-road, and that so far as he could see there were no other means around there that these cinders might have come from except from the railroad track.

There is no testimony in the record that any engines of the defendant passed the site of plaintiffs' barn, either on the day Anderson viewed the premises, or any time previous thereto. There is no testimony as to how hard or in what direction the wind was blowing the night before Anderson viewed the premises, nor is there any evidence whatsoever as to the equipment of other engines of the defendant, or the manner in which they were operated. There is no evidence as to how the cinders which Anderson saw on the site of the barn got there. By no stretch of the imagination could this testimony as to facts observed seventeen months after the fire be admissible.

All this testimony is so remote as to have no probative value whatsoever and could in no way assist the jury in determining whether or not the fire to plaintiffs' property was occasioned through the negligence of the defendant either in the equipment of its locomotive or in the operation thereof.

Any deduction from this evidence would be a decision made on a most remote inference, and it could only influence the minds of the jury to the prejudice of the defendant.

ARGUMENT FOR DEFENDANT IN ERROR.

The theory upon which the plaintiff in error would seem to base its first assignment of error is that there was nothing in plaintiffs' case except circumstantial evidence from which it might be presumed that the fire was caused by sparks or fire from a passing locomotive and that there was no evidence of negligent construction or negligent operation.

In most of the states of the Union it is the law that, the origin of the fire being fixed on the railroad company, the plaintiff may

rest his case there and the law will presume such evidence to be prima facie evidence of negligent operation on the part of the railroad company, and the burden will be shifted to it to prove that it was not negligent. In some states this rule is established by statute, and in others it is the general decisional law.

*Jefferis v. Railroad Co.*, 3 *Houst.* 447, was decided by the Superior Court, and hence is not controlling on this court; but it is submitted, nevertheless, that the evidence on the part of the plaintiffs below fully met the law as laid down in that case.

In considering whether there was sufficient evidence on the part of the plaintiffs below to send the case to the jury, the testimony of the witnesses for the plaintiffs below of course should be given the fullest effect.

Briefly stated the record discloses that the testimony of the witnesses for the plaintiffs below proved that the barn was destroyed by fire, that the barn was located about 150 feet from the defendant's right of way, that shortly before the fire was discovered a train had passed along the defendant's right of way, that the engines on the right of way habitually emitted a great many sparks, that fires had frequently been discovered in the fields along the defendant's right of way in the neighborhood of the barn in question shortly after trains had passed, that a fire was once discovered within 5 or 6 feet of the barn shortly after a train had passed, and that there was nothing to which the cause of the fire could reasonably be attributed except sparks or fire from a locomotive passing along the defendant's right of way.

It is uniformly held by all the authorities, everywhere, that proof that a fire was caused by sparks from a passing locomotive may be established by circumstantial evidence. Indeed, it is seldom that such fact can be proved in any other way. The jury was justified in finding that the barn in question in this case was set on fire by a spark or sparks from a passing locomotive. There is nothing in the testimony on behalf of either party, from which it may be inferred that the fire may have been caused in sr ne other way.

31  Del.]  Director General of Railroads vs. Johnston  415

Statement.

The important question, however, is whether there was any evidence from which the jury might have found negligence on the part of the defendant, either in the equipment of the engine or in the operation thereof.

The courts have held that where a building situated some distance from a railroad track has been set on fire by sparks from a passing locomotive this would be held to be substantive and affirmative proof of either negligent operation or want of adequate appliances to prevent the escape of sparks.

One of the earliest cases on this point is *Huyett v. Railroad Co.*, 23 *Pa.* 373. See *Louisville & N. R. Co. v. Malone*, 109 *Ala.* 509, 20 *South.* 33.

See, also, *Railroad Co. v. Scheible*, 162 *Ky.* 469, 172 *S. W.* 910, where the facts proved were quite similar to those proved in this case, and no more complete, and the grounds for reversal relied on were that there was not sufficient evidence to show that the fire started from a spark escaping from an engine or to show negligent operation or negligent equipment of a locomotive.

Two witnesses for the defendant below testified that, in 50 years' experience with locomotives, they had never known sparks to ignite anything 150 feet distant from the locomotive that emitted them. Courts of high authority hold that the fact that live sparks from a locomotive did cause a fire so far distant from the railroad is itself evidence that the locomotive was not equipped with proper appliances to prevent the emission of sparks, or that such appliances were out of repair, or that the locomotive was being negligently operated.

If there was circumstantial evidence in this case to go to the jury from which they might, if they saw fit, attribute the fire to the railroad company, as there undoubtedly was, the foregoing and following authorities establish the proposition that the great distance from the railroad at which the fire was started is evidence to go to the jury to establish the negligence of the railroad company in starting the fire: *Railroad Co. v. Quaintance*, 58 *Ill.* 389, 397; *Van Steuben v. Railroad Co.*, 178 *Pa.* 367, 35 *Atl.* 992, 994,

34 *L. R. A.* 577; *Railroad Co. v. McClelland*, 42 *Ill.* 357; *Missouri Railway Co. v. Texas Railway Co.* (*C. C.*) 41 *Fed.* 917.

In addition to the testimony of witnesses concerning the train which passed the barn shortly before 8 o'clock there was also the testimony of the colored man, Walter Washington, that a train had previously passed shortly after 6 o'clock or thereabouts. There was testimony on behalf of the defendant below to the effect that a certain train known as "extra 1044" passed the barn about 8 o'clock on the evening of the fire. Aside from the fact that there was no testimony that this engine was the only engine to pass the barn at about 8 o'clock or shortly before that time, there was nothing in the case at the time the witnesses for the plaintiffs below testified to identify the particular engine as "extra 1044" or as any other particular engine.

The question of the admissibility of such testimony is made the basis of assignments of error Nos. 13, 14, 15, 16, 17 and 20, and it will be discussed when treating of those assignments of error.

It is uniformly held that evidence of other fires caused by sparks escaping from other engines of the railroad at other times is evidence of negligence on the part of the railroad company either in the equipment of its locomotives or in the management thereof, as the jury may find. *Railroad Co. v. Richardson*, 91 *U. S.* 474, 23 *L. Ed.* 356; *Northern Pacific v. Lewis*, 51 *Fed.* 664, 2 *C. C. A.* 446; *Gowen v. Glaser* (*Pa.*) 10 *Atl.* 417; *Field v. New York Central R. Co.*, 32 *N. Y.* 339; *Bright Hope Ry. Co. v. Rogers*, 76 *Va.* 443; *Missouri Pac. Ry. Co. v. Donaldson*, 73 *Tex.* 124, 11 *S. W.* 163.

A careful examination of the Jefferis Case in this state discloses that the general nature of the evidence on behalf of the plaintiff was the same as in this case, and the court held that it was incumbent upon the plaintiff not only to establish to the satisfaction of the jury that the plaintiff's barn was fired by sparks from the engine of the railroad company, but that even if he established that fact it remained also necessary for him to prove that such firing resulted from the carelessness or negligence of the defendant.

The court nevertheless held that as the case stood the question was one of fact to be decided by the jury. It will be seen from the statement of the facts in that case that the proof as to the cause or origin of the fire was no greater than in this case, the only evidence of negligence apparently being proof of other fires at other times and sparks seen, at other times, issuing from the smokestacks of the railroad company's locomotives. In this case, in addition to this proof, there is the fact of the distance of the location of the barn from the track, the fact that, at the time of the fire, the defendant below was habitually using, on its road past the barn, a locomotive that was not equipped with a spark arrester, and if the fire was attributed by the jury to extra 1044, that hard puffing of the locomotive and the sanding of the track are circumstances from which, taken in connection with the grade and curve of the track, the jury might infer negligent operation consisting in overloading the locomotive, notwithstanding the testimony of defendant's witnesses that the load was only normal. The jury had the right to accept what evidence they preferred.

The court in the Jefferis Case, after laying down the rule as to proof required to be furnished by the plaintiff, held:

"That as the case stood, negligence was a question of fact to be decided by the jury, according to the weight or preponderance of the evidence."

See *Railroad Co. v. Cecil (Ky.)* 90 *S. W.* 585, where the evidence that the fire was caused by sparks from an engine on the railroad was exceedingly meager.

The inherent difficulties in the way of proving negligence in cases such as this have caused courts to lay down the bars to a considerable extent in the proof required to meet the usual burden of establishing the negligence alleged. *Union Pacific R. Co. v. De Busk*, 12 *Colo.* 294, 20 *Pac.* 752, 3 *L. R. A.* 352, 13 *Am. St. Rep.* 221.

The case was properly one to go to the jury.

The prayers referred to in the second, third, and fifth assignments of error were adequately and fairly covered by the charge of the learned court below. The charge was quite favorable to the defendant below and covered the substance of the prayers referred to.

The prayer embodied in the fourth assignment of error was wholly immaterial and irrelevant.  There was no issue on this point and no question raised concerning the right of the defendant to operate its railroad by steam engines.

The prayer referred to in the sixth assignment of error is merely a restatement in different language of the prayers referred to in the third and fifth assignments of error.

The prayer embodied in the seventh assignment of error is likewise merely a statement in different language of proposition contended for in other prayer of the defendant below, and fully covered, favorable to the defendant below, by the charge of the learned court below.

As to the eighth assignment of error:

We have no statute in this state raising a prima facie presumption of negligence, to which reference has been made, and the Jefferis Case follows that law in those few jurisdictions which hold that the plaintiff must do more than prove the facts sufficient in most jurisdictions to raise this prima facie presumption of negligence, but must prove facts from which the jury may find negligence on the part of the railroad company.

Even in those jurisdictions where this prima facie presumption exists the courts are not harmonious on the question of whether, when the prima facie presumption is rebutted by proof of proper equipment and careful management, the question becomes one of law for the court or of fact for the jury.

The strongest case holding that the question is one of law for the court is the case of *Woodward v. Chicago, M.& St. P. R. Co.*, 145 *Fed.* 577, 75 *C. C. A.* 591.  We will cite several authorties holding to the contrary of the opinion in that case.  *Railway Co. v. Geiser*, 68 *Kan.* 281, 75 *Pac.* 68; *Continental Ins. Co. v. Chicago & N. W. Ry. Co.*, 97 *Minn.* 467, 107 *N. W.* 549, 5 *L. R. A.* (*N. S.*) 99; *Hemmi v. Chicago G. W. Ry. Co. et al.*, 102 *Iowa*, 25, 70 *N. W.* 747; *Great Northern Ry. Co. v. Coats*, 115 *Fed.* 454, 53 *C. C. A.* 382; 2 *Thamp. on Neg.* §§ 2234, 2287, 2288, 2290.

All the authorities, however, on both sides of the question, agree that the question is one of fact for the jury and not of law

for the court, if there is any evidence whatever from which the jury may find negligence on the part of the railroad company.

The authorities holding to the doctrine of *Woodward v. Chicago M. & St. P. R. Co.* hold that the question is one of law for the court only in those cases where the plaintiff has introduced no evidence except such as is sufficient to make out the prima facie presumption under statutes such as those referred to, or under the law in those states which hold such a presumption to exist even in the absence of statute.

In *Preece v. Railway Co.*, 24 *Utah*, 493, 68 *Pac.* 413, the court said:

"When there is other evidence of negligence than that upon which such prima facie case rests, the question is one for the jury, and not for the court. In the case at bar the plaintiff did not rely solely on the evidence which showed that the fire was started by the defendant's engine, but introduced other evidence which tended to prove the defendant's alleged negligence. The case was therefore properly submitted to the jury."

See, also, *Insurance Co. v. Railroad Co.*, 97 *Minn.* 467, 107 *N. W.* 551, 5 *L. R. A.* (*N. S.*) 99.

While the charge to the jury was not in the exact language of the prayer referred to in the ninth assignment of error, the proposition of law therein contended for was adequately covered by that portion of the charge to the effect that proof that the firing and destruction of the property resulted from negligence of the defendant must be established by the plaintiffs, and also that negligence is the gist of the action, and that the plaintiffs cannot recover unless the evidence establishes negligence on the part of the defendant, and that negligence is never presumed and the burden of proving same is upon the plaintiffs.

The plaintiff in error contends that the instruction, the basis of the tenth assignment of error, was erroneous because the only circumstantial evidence in the case was "evidence of other fires at other times," which, it says, was improperly admitted. In addition to this there was evidence of the great distance from the railroad at which the fire originated; evidence that the locomotives of the defendant habitually threw out sparks when puffing hard; evidence that a locomotive equipped with a spark arrester will

throw out sparks when its wheels are slipping; also when cinders are allowed to accumulate in the front end; also when the fire is tended in a certain way; evidence that a certain locomotive of the defendant that passed the barn shortly before the fire was discovered, to wit, extra 1044, was puffing hard when near the barn, and that sand was then being applied to the rails, and that the locomotive was then drawing a long train of from 16 to 18 freight cars upon a curving track up an ascending grade from which facts the jury might if they saw fit infer want of a proper spark arrester, or a defect in the spark arrester, or negligent operation consisting in either failure to keep the front end of the locomotive clean or improper fixing or overloading the engine, notwithstanding the verbal testimony of the defendant's employees to the effect that the locomotive in question was equipped with a proper spark arrester and that the same was in good repair and that the locomotive was being carefully operated.

As to the eleventh assignment of error, *Rev. Code* 1915, §4 266, being the same as *section* 2377, *Rev. Code* 1852, provides:

"If at any court a sufficient number of grand or petit jurors, drawn and summoned as aforesaid, do not appear; or if the panel returned by the sheriff be quashed by the court, the court may award a tales de circumstantibus, or make such other order as it may deem expedient for filling up the requisite number of jurors to serve at such court. In like manner a deficiency of the petit jurors may be supplied, when by reason of challenges, or otherwise, a sufficient number are not ready for the trial of a cause."

See action of court apparently under authority of said section in *State v. Windsor*, 5 *Harr.* 512; In *re Motion to Quash Panel of Jurors*, 5 *Pennewill*, 588, 65 *Atl.* 769; *Id.*, 6 *Pennewill*, 171, 65 *Atl.* 770; *Sigerella v. State*, 1 *Boyce*, 157, 74 *Atl.* 1081.

Under the authority of the last-mentioned case, even if the action of the court in summoning the additional jurors had been irregular, same would not constitute reversible error. There was no such irregularity, and the statute plainly confers upon the court the power to summon jurors in the manner done by the court below.

The twelfth assignment of error is abandoned.

The argument of counsel for the plaintiff in error upon the

31 Del.] Director General of Railroads vs. Johnston 421

Statement.

thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and twentieth assignments of error, argued together in the brief of counsel for the defendant below, all going to the admission of testimony of witnesses for the paintiffs below on the point of proving other fires caused by engines of the defendant below at other times in the vicinity of the barn, assumes that, at the time of the admission of the evidence in question, a particular locomotive had been identified as the one that caused the fire. The locomotive that caused the fire was never identified during the trial by either plaintiffs' or defendant's evidence. It is true that it was testified by several witnesses for the defendant below that locomotive 1044 passed the barn about 8 o'clock p. m., but no witness testified that no other locomotive passed about the same time. About 8 o'clock may mean shortly before or shortly after that hour and clearly covers a period of time within which several trains can pass a given point. The discovery of the fire about 15 minutes after the passing of a train at about 8 o'clock does not connect the fire with that train. Another train is known to have passed not more than two hours before and others may have passed in the interval. It is matter of common knowledge that a spark falling on dry straw or other highly combustible material may start an active conflagration quickly, and falling on a roof may smoulder for a long time, even hours, until a sudden breeze from the right direction causes the fire to break into flame.

What is a sufficient identification of a locomotive as the cause of a fire is made clear by the text of *Elliott on Ev.* § 188; also *Elliott on Railroads*, § 1243a.

All the authorities cited by counsel for the defendant below deal with cases where the engine in question was identified. It is evident from these authorities that evidence of other fires at other times is admissible where the engine which caused the fire is unknown or unidentified. As a matter of fact all the authorities hold to this effect uniformly.

We shall cite on this point only the case of *Chicago, St. P., M. & O. R. Co. v. Gilbert*, 52 *Fed.* 712, 3 *C. C. A.* 264.

The eighteenth and nineteenth assignments of error re'ate

to the admission of certain testimony of a witness named Henry
Anderson, called on behalf of the plaintiffs below.

The evidence objected to and admitted was not evidence of
the witness testifying as an expert, but related merely to the finding
of cinders in the vicinity of the site of the barn. The testimony was
harmless from any viewpoint, but may be considered to have been
admissible upon the same theory that testimony of other fires
at other times, in the case of an unidentified locomotive, is ad-
mitted. Even if irrelevant, which we do not admit, the testimony
was harmless and could not by any fair construction prejudice the
minds of the jury.

HEISEL, J. (delivering the opinion of the court). This case
was tried before a jury in the Superior Court in New Castle county
and a verdict rendered in favor of the plaintiffs below, upon which
judgment was entered, and the case is in this court on a writ of
error.

The counts of the declaration, not abandoned at the trial,
charge that the barn and contents of the plaintiffs below were de-
stroyed by a conflagration caused by sparks or fire emitted from
a locomotive or locomotives of the defendant below by reason of
either (a) the negligent operation of a locomotive, or (b) the negli-
gent failure to equip its locomotives with appliances to prevent
the escape of fire and sparks from their smokestacks, or (c) the
negligent failure to equip its locomotives with appliances to pre-
vent the escape of fire from their ash pans and fire boxes.

The facts that were proved below and are pertinent here may
be thus stated:

About 8 o'clock on the evening of October 9, 1918, a barn
owned by the plaintiffs below, located near Guyencourt station
in Christiana Hundred, along the right of way of the defendant be-
low, was found to be on fire, the result of which fire was the total
destruction of the barn and its contents. No one actually saw the
barn set on fire, and hence there was no direct testimony to show
the cause of the fire, the testimony on behalf of the plaintiffs be-
low for the purpose being circumstantial.

About 4.30 on the afternoon of the day of the fire a colored

man named Walter Washington had been in the barn getting ready to milk and after he finished milking he put the milk away and let the cows out and then went to the house where he lived, which was three or four minutes' walk from the barn. At that time no lights of any kind were being used, the work being done by daylight. There were no electric lights or lamps used in the barn, and no lights had been used there for months, it being summer and the work being finished by daylight. Between 6 o'clock and the time of the fire two trains on the railroad of the plaintiff in error passed by the barn, one a little after 6, and another one about 8 o'clock. The fire was discovered about 8 o'clock or shortly thereafter, about 15 minutes after the second train above mentioned had passed. The barn in question was located about 150 feet from the defendant's right of way. There had been other fires, on other occasions, on the farm on which the barn was located, no cause for which could be assigned, except that they were caused by sparks or fire from locomotives passing along the railroad of the defendant below. One such fire was discovered within 5 to 6 feet of the said barn. The locomotives running on the said railroad had emitted a great many sparks on numerous other occasions. One of the locomotives of the defendant below, accustomed to run past the said barn at the time of the fire, was not equipped with a spark arrester at that time. Witnesses for the defendant below testified that a certain train, described as "special 1044" or "extra 1044," passed the barn in question, going toward Wilmington, about eight o'clock on the evening of the fire; that the engine drawing this train was equipped with an improved spark arrester, which had been examined before the trip began and after the trip ended, and was found to be in good order; and that the engine was carefully operated.

At the time of the fire the wind was blowing from the direction of the railroad track toward the said barn.

The railroad track, as it approaches the location of the barn going toward Wilmington, is both curved and an ascending grade.

A witness for plaintiffs below testified he lived on the farm on which the said barn was located during the year preceding that

in which the fire occurred and had experienced a number of fires on the farm which had happened "right after the train passed."

"Extra 1044" was a freight train consisting of a locomotive and 16 to 18 cars. The load of the train was about 1,200 tons.

Macklin, an experienced locomotive engineer, testifying for plaintiffs, said a heavy train using a great deal of coal would cause red-hot cinders to accumulate in the "front end" of the locomotive, and this would cause more sparks to get through the spark arrester and go out the stack. Such accumulation should be cleaned out during the run of the train. He also testified that grades, curves, the method in which the fire is tended by the fireman, and the slipping of the engine all tend to cause the locomotive to throw out sparks.

Bampton, the engineer of "extra 1044," testifying for the defendant below, said that sand is used on the track to prevent the locomotive from slipping. He also said that just before he got to the Ramsey farm he was putting sand on the track and when near the said barn he was out on top of his locomotive at the sand dome fixing it so that the sand would run down on the track. He stated, nevertheless, that the engine was not slipping.

There are 21 assignments of error; the twelfth and twenty-first are not relied on.

The first assignment of error is the refusal of the court below to direct a verdict in favor of the defendant below at the close of all the testimony in accordance with the defendant's first prayer.

The basis of this contention is, first, that the plaintiff below failed to show that the fire was caused by sparks from defendant's locomotive, and, second, that there was no evidence of negligent construction or negligent operation of such locomotive.

It was shown by the testimony of the witnesses for plaintiff below that the barn was located about 150 feet from defendant's right of way, that about 2 hours before the fire was discovered a train had passed along defendant's right of way, and shortly before the fire was discovered (about 15 minutes) another train had passed along defendant's right of way; that the engines on the right of way habitually emitted a great many sparks; that

31 Del.] Director General of Railroads vs. Johnston     425

Opinion.

fires had frequently been discovered in the fields along the right of way in the vicinity of the barn shortly after trains had passed; that a fire was once discovered within 5 or 6 feet of the barn shortly after a train had passed; and that there was nothing to which the cause of the fire in question could reasonably be attributed except to sparks or fire from a locomotive passing along defendant's right of way.

[1, 2] That the fire was caused by a spark from a passing locomotive may be proved by circumstantial evidence we have no doubt. Indeed, it is the usual way of proving such fact. There is in this case sufficient evidence from which the jury might find that the fire in question was caused by a spark from a locomotive on the railroad of the defendant below.

[3, 4] There being evidence from which the jury could have found that the fire was caused by one of defendant's locomotives, is there further evidence in the case from which the jury could be justified in finding negligence, in either the construction, or operation of such locomotive? Under the law in this state, as laid down in *Jefferis v. Railroad Co.*, 3 *Houst.* 447, which was closely followed by the court below in this case, it is not sufficient for the plaintiffs to prove that a spark from a locomotive of defendant set fire to the barn, but he must show by other evidence additional facts from which the jury may find negligence. The law as thus declared in the Jefferis Case is not challenged by counsel for plaintiffs below, but he contends that such additional facts were shown, which justified the court in submitting the case to the jury, and the jury in finding the defendant negligent either in the equipment or operation of one of its locomotives on the evening of the fire. It having been shown that a building was set on fire by a spark from a locomotive, the distance of such building from the railroad may be evidence of negligence in equipment, or operation.

In *Huyett v. Railroad Co.*, 23 *Pa.* 373, the fire was started 73 feet from the right of way; held to be evidence of negligence. So in *Louisville & N. R. Co. v. Malone*, 109 *Ala.* 509, 20 *South.* 33, where the distance was 63 feet. In *Railroad Co. v. Scheible*, 162 *Ky.* 469, 172 *S. W.* 910, the building destroyed was from 80 to

90 feet away.   In *Railroad Co. v. Quaintance*, 58 *Ill.* 389, the court said:

"It is conceded by the witness Jackman, who is doubtless a skillful and learned man in his profession, that if the engine, at the time in question, did throw fire sparks to the distance of 150 feet, of sufficient size and of life enough to ignite the house, it must necessarily have been out of repair."

The distance of the barn in the case at bar was 150 feet from the right of way of the defendant, which is a very unusual distance for a live spark to carry, and if the jury believed it did carry that far and ignite the barn, it would be especially strong proof of defective equipment or operation or both.

Evidence of other fires, along the right of way at other times, the cause for which is not accounted for,  except by sparks from passing locomotives, is admissible and is evidence of negligence, when the engine that set the fire is not identified.  *Railroad Co. v. Richardson*, 91 *U. S.* 474, 23 *L. Ed.* 356;  *Northern Pacific v. Lewis*, 51 *Fed.* 664, 2 *C. C. A.* 446;  *Gowen v. Glaser (Pa.)* 10 *Atl.* 417;  *Field v. New York Central R. Co.*, 32 *N. Y.* 339;  *Bright Hope Ry. Co. v. Rogers*, 76 *Va.* 443.

The identity of  the engine in this case is more fully considered under assignments of error Nos. 13, 14, 15, 16, 17, and 20.

Even if the jury believed the spark that set the fire came from engine No. 1044, and further believed said engine was equipped with sufficient spark arrester, the jury may, nevertheless, consider the evidence of the manner in which the engine was being operated around the curved track, up grade, the weight of the train, and the emission of sparks on the evening of the fire as evidence of negligent operation.

We are clearly of the opinion the court was not in error in refusing to charge the jury to find a verdict in favor of the defendant, and in submitting the case to the jury for its determination upon the evidence.

Our finding on the first assignment of error would seem to dispose of the eighth assignment also; and while that assignment was fully and ably presented by counsel on both sides, we feel nothing will be accomplished by a further examination of a question necessarily considered in deciding the first assignment.

The second, third, fifth, sixth, seventh and ninth assignments of error allege failure of the court below to charge the jury in accordance with the several prayers mentioned in such assignments.

We are of the opinion that the substance and effect of the instructions requested by the defendant below in those prayers were given by the court below in its charge to the jury, and, while there could have been no objection to the court applying the law, charged by them, somewhat more specifically to the facts of the case on trial, we think the instructions prayed for by the defendant below were covered by the charge of the court.

[5]   The fourth assignment alleges that the court erred in refusing to instruct the jury:

"That the defendant had an unquestioned right to operate the railroad by engines propelled by steam generated by fire."

There was no issue in the case as to the right of the defendant to so operate the road, and, therefore, no occasion for the court to instruct the jury on the point.

[6]   The tenth assignment charges the court below erred in instructing the jury:

"Whether the alleged firing of plaintiffs' property resulted from the alleged acts of negligence of the defendant company, or any of them, may be shown by either direct or circumstantial evidence"

— for the reason that the only circumstantial evidence in the case was evidence of other fires at other times, which evidence was inadmissible and should have been ruled out.

Aside from the admissibility of evidence of other fires, there is evidence of other circumstances from which the jury might have inferred negligence in the equipment or operation of the defendant's engine which caused the fire.

[7]   The eleventh assignment of error is based upon the refusal of the court below to dismiss the array of jurors drawn as additional jurors from which panel a jury to try this case was drawn, for the reason that the additional jurors were drawn and summoned contrary to the statutes of this state.

It is not disclosed by the record how the additional jurors were drawn and summoned. The authority of the court to keep

in attendance the requisite number of jurors to serve the court is very broad. *Section* 4266, *Code* 1915, provides:

"If at any court a sufficient number of grand or petit jurors, drawn and summoned as aforesaid, do not appear; or if the panel returned by the sheriff be quashed by the court, the court may award a tales de circumstantibus, or make such other order as it may deem expedient for filling up the requisite number of jurors to serve at such court. In like manner a deficiency of the petit jurors may be supplied, when, by reason of challenges, or otherwise, a sufficient number are not ready for the trial of a cause."

[8]   The thirteenth, fourteenth, fifteenth, sixteenth, seventeenth and twentieth assignments of error go to the admission of testimony of witnesses of plaintiff below as to other fires caused by engines of the defendant below at other times in the vicinity of the barn in question.

There seems to be a marked uniformity in the decisions of the courts relating to the admission of such evidence. The rule is that testimony of other fires is admissible when the identity of the engine which set out the fire is a disputed question for the jury to determine and is not admissible when the identity of the engine is admitted, or is so conclusively proven, as no longer to be a disputed fact for the jury.

The cases cited by counsel for plaintiff in error in his argument on this branch of the case, as well as many others, fully support this rule.

[9]   If the fire that destroyed the barn in the case at bar was caused by an engine of the defendant, was the identity of such engine a disputed question of fact to be determined by the jury? The defendant below did not admit that the fire was started by a spark from its engine No. 1044, but contended that, if it was started from any engine, it must have been from No. 1044.

The testimony on this point showed that the fire occurred about 8 o'clock in the evening; that a little after 6 o'clock one train passed, and about 8 o'clock another train passed; and shortly thereafter, probably about 15 minutes, the fire was discovered. It is not disclosed by the evidence whether or not any other engine passed that point within a time when it would be reasonable to infer that the fire could have started from a spark from it.

A careful consideration of the evidence satisfies us that the origin of the fire was a disputed fact to be determined by the jury, and that, in determining that fact, there was evidence from which it might find the fire to have been started from some engine of the defendant below, other than engine No. 1044. The court below, therefore, did not err in admitting evidence of other fires.

[10] The eighteenth and nineteenth assignments of error are based upon the admission of, and the refusal to strike out, the testimony of Henry Anderson, a witness for the plaintiffs below.

Anderson testified that about a year and five months after the fire he was at the site of the burned barn and—

"noted that the greater part of the site of the barn was covered with freshly fallen snow. The surface was white, with the exception of cinders, which were lying on the top of the snow.   *   *   *   There were more cinders near the railroad track than there were upon the site or between the site of the barn and the track; that is, they increased as you got nearer to the railroad track."

Witness stated the size of the cinders to be an eighth of an inch or larger; that he found cinders as much as twenty feet beyond the barn site, away from the railroad, making a total of approximately 200 feet from the railroad track to the last cinders found there in any appreciable quantity; that witness could conceive of no other means around there where these cinders might have come from except from the railroad track; that the cinders were on the top of the snow, and had apparently fallen there.

Counsel for plaintiff in error contends that this testimony is irrelevant, immaterial and inadmissible; that it is of no probative value whatever, and any deductions from it could only influence the minds of the jury to the prejudice of the defendant.

Defendant in error argues that Anderson's testimony was harmless from any viewpoint, but may be considered as admissible upon the same theory that testimony of "other fires" at other times, in the case of an unidentified locomotive is admitted.

The broadest inference that can be drawn from Anderson's testimony is that cinders might be carried from a locomotive on defendant's railroad to the site of the barn and 20 feet beyond. There is nothing in his testimony or in the testimony of any other

witness to show whether the cinders were alive or dead when deposited upon the snow, or what the wind and other conditions were at the time the cinders were deposited upon the snow. We think the evidence is without probative force, and was not admissible on the theory that evidence of "other fires" is admissible, and should have been excluded by the court below. And while we have been in some doubt as to the effect of its admission, after a careful consideration of all the evidence in the case, we are of the opinion that the judgment should not for that reason be reversed.

The judgment below is affirmed.

Judge Rice dissenting.