PHILADELPHIA AND READING RAILWAY COMPANY, a corporation of the State of Pennsylvania, Defendant Below, Plaintiff in Error, *vs.* GREEN AND FLINN, INCORPORATED, a corporation of the State of Delaware, Plaintiff Below, Defendant in Error.

PHILADELPHIA AND READING RAILWAY COMPANY, a corporation of the State of Pennsylvania, Defendant Below, Plaintiff in Error, *v.* JOHN G. LUKE, MARIA G. MORROW, ALLAN L. LUKE, CHARLES W. LUKE, WILLIAM GREEN and SECURITY TRUST AND SAFE DEPOSIT COMPANY, a corporation of the

Syllabus.

State of Delaware, trustee under the last will and testament of Mary Green Studebaker, deceased, for Charles A. Studebaker, Plaintiffs Below, Defendants in Error.

1. RAILROADS—INSTRUCTION ON REBUTTAL OF PRESUMPTION OF NEGLIGENT OPERATION OF ENGINES SETTING FIRE PROPERLY REFUSED.

   In an action against a railroad company for setting fire, it was not error to refuse to instruct that, where the presumption of negligent construction or operation arising from the fact that the fire was set by defendant's locomotives, when that presumption thus arising is repelled and rebutted by proof of proper construction and use of appliances and careful management and operation, plaintiffs cannot recover without producing proof of actual negligence or want of ordinary care.

2. EVIDENCE—HYPOTHETICAL QUESTION AS TO LIABILITY OF SETTING FIRE BY SPARKS FROM LOCOMOTIVE HELD PROPER.

   In an action against a railroad company for setting fire to plaintiff's property, due to sparks escaping from a locomotive, an hypothetical question as to whether lighted sparks could have been responsible for the fire *held* not objectionable as not supported by evidence that a living spark had alighted on anything 90 feet distant from the railroad.

3. APPEAL AND ERROR—OBJECTION THAT HYPOTHETICAL QUESTION WAS NOT BASED ON TESTIMONY CANNOT BE FIRST MADE ON APPEAL.

   Where a hypothetical question is not objected to as not being based on testimony in certain particulars, such objection cannot be made for the first time on appeal.

4. APPEAL AND ERROR—OBJECTIONS TO QUALIFICATIONS OF EXPERT AND TO EXPERT TESTIMONY TOO LATE WHEN FIRST MADE ON APPEAL.

   Objections to the testimony of a witness that he was not qualified as an expert, and that the question was not properly the subject of expert testimony, came too late when first made in the argument upon writ of error.

5. EVIDENCE—PRACTICAL LOCOMOTIVE FIREMAN AND ENGINEER, ALTHOUGH TEMPORARILY ABSENT FROM SERVICE, MAY TESTIFY AS TO CARE OF SPARK ARRESTER AND EFFECT OF OPERATION OF TRAIN.

   In an action against a railroad company for negligently setting fire, a witness called upon to describe spark arresters and their care, and also how the quantity and size of sparks are affected by the operation of the train and the method of firing, who had nearly nine years' experience as a practical locomotive fireman and ten years' as a practical locomotive engineer, was not disqualified to testify merely because he had not been in the railroad service for one year and eight months.

6. APPEAL AND ERROR—OBJECTIONS TO EVIDENCE NOT MADE AT TRIAL CANNOT BE FIRST URGED ON APPEAL.

   In an action against a railroad company for negligently setting fire by sparks escaping from its locomotives, an objection to evidence, referring specifically to the spark arresters as used on a certain railroad system, not urged at the trial, cannot be made on appeal.

7. APPEAL AND ERROR—ADMISSION OF EVIDENCE AS TO SPARK ARRESTER ON OTHER RAILROADS, IF ERROR, HELD HARMLESS.

In an action against a railroad company for damages for fire set by sparks escaping from its locomotives, admission of evidence as to spark arresters on the engines of a certain railroad company, if error, *held* harmless.

8. RAILROADS—EVIDENCE OF OTHER FIRES ADMISSIBLE.

Evidence of other fires along the right of way at other times, the cause for which is not accounted for except by sparks from passing locomotives, is admissible as evidence of negligence, when the engine that set the fire is not identified.

9. APPEAL AND ERROR—EVIDENCE AS TO OTHER FIRES SET BY DEFENDANT NOT OBJECTIONABLE, IN ABSENCE OF OBJECTION AS TO TIME.

Where evidence of other fires at other times along defendant's right of way was introduced, error could not be predicated upon the fact that the time of such other fires was not limited; the questions not having been objected to on that ground, and a mere general objection not being sufficient.

10. RAILROADS—EVIDENCE OF OTHER FIRES HELD PROPERLY LIMITED.

In an action against the railroad company for setting fires by sparks from its locomotives, a limitation of the time within which other fires along the right of way could be shown to about one year *held* not unreasonable.

11. RAILROADS—EVIDENCE OF OTHER FIRES HELD NOT INADMISSIBLE AS FAILING TO SHOW SIMILARITY OF EQUIPMENT.

In an action against a railroad company for setting fire by sparks escaping from its locomotives, admission of evidence of other fires was not erroneous, because it was not shown that the engines causing such fires were equipped similarly to the engines which passed plaintiff's lumber yard shortly before the fire; the engine actually causing the fire not having been identified.

12. RAILROADS—EVIDENCE OF OTHER FIRES HELD ADMISSIBLE OVER OBJECTION ENGINE WAS IDENTIFIED BY USE OF "A" OR "ONE" IN PLEADING.

In an action for damages by fire claimed to have been set by defendant's locomotives, an instruction that evidence of other fires along the right of way at other times, the cause of which is not accounted for except by sparks from passing locomotives, was evidence of negligence, when the engine setting the fire was not identified, *held* not erroneous, as against the objection that the engine setting the fire was identified by the evidence and by the declaration charging negligence either in the equipment or operation of "a" or "one" of defendant's locomotives; the article "a" and the word "one" connoting the idea of indefiniteness.

13. RAILROADS—EVIDENCE OF OTHER FIRES HELD ADMISSIBLE, THOUGH FIRE ALLEGED WAS CAUSED BY ONE OF TWO ENGINES.

In an action against the railroad company for setting fire from sparks from passing locomotives, the rule that evidence of other fires is evidence of negligence when the engine setting fire is not identified applies though the fire was caused by one of two engines; such fact not constituting an identification of the engine setting the fire.

14.  RAILROADS—CAUSE OF FIRE HELD QUESTION FOR JURY.

Evidence of the passing of two trains, one of which was seen to be emitting sparks and the other may have emitted them, the discovery of the fire shortly thereafter, the frequency with which sparks from engines had at other times set fire, and that all other probable causes for the fire were eliminated, *held* to present a question for the jury as to whether the fire was caused by sparks from a passing locomotive.

15.  RAILROADS—NEGLIGENT EQUIPMENT OR OPERATION CAUSING FIRE HELD FOR JURY.

Evidence *held* to present a question for the jury as to whether fires complained of were due to negligence of defendant railroad company in either the equipment of the engine for preventing the escape of sparks or in its operation.

(*October* 26, 1922.)

WOLCOTT, Chancellor, RICHARDS and RODNEY, J. J., sitting.
*John W. Huxley, Jr.,* for plaintiff in error.
*Daniel O. Hastings and Ayres J. Stockly* for defendants in error.

Supreme Court, June Term, 1924.

Writs of Error to Superior Court, New Castle County, Nos. 186 and 187, respectively, March Term, 1921.

For proceedings in lower court, *see Supra, p. 72.*

These actions were brought to recover damages occasioned by a fire alleged to have been due to the negligence of the defendant below. Green & Flinn, Incorporated, plaintiff below in one of the cases, was engaged in the lumber business, and the property alleged in its case to have been burned and destroyed was personal property consisting of lumber and other chattels. John G. Luke, and others, plaintiffs below in the other case, were the owners of the real estate on which the lumber business of Green & Flinn, Incorporated, was carried on, and the property alleged in their case to have been burned and destroyed consisted of buildings, structures, fixtures and improvements composing a part of the realty.

Negligence on the part of the defendant below in setting the same fire is alleged in both cases, the only difference between the two cases being in the nature, character and ownership of the property alleged to have been burned. This being so, the two cases were, by agreement, tried together.

The cause of action described in each case was that the defendant below was guilty of negligence, carelessness and unskillfulness in either (a) the operation of its locomotives, or (b) in their equipment, whereby the fire in question was set.

Evidence was produced to establish the following facts:

Not very long after 6:15 o'clock on the evening of February 26, 1921, the lumber yard of Green & Flinn, Incorporated, was observed to be on fire. This yard was located at Greenville, Delaware, along the right of way of the defendant below. The fire was discovered at a point about 90 feet distant from the railway. No direct testimony showing how the fire was actually set was produced. The plaintiffs below relied entirely on circumstantial evidence to fix responsibility for the fire upon the defendant below.

Between 5 and 7 o'clock in the evening of the day of the fire two and only two trains of the defendant below passed the lumber yard in question. One was a south bound passenger train passing at 5:57 or 5:58. The other was a north bound freight, drawn by an "extra" engine, passing at about 6:12 or 6:18. These two trains were seen by witnesses. The passenger train was observed by one witness who was riding in an automobile, and who said she (the train) was late and that "he [meaning, we suppose, the engineer] threw her (the engine) wide open." This same witness saw the freight train coming up through a woods with the furnace door open. He drove by the lumber yard and everything seemed "O. K." The passenger train was seen to pass the lumber yard by another witness who was at the bunk house on the side of the track opposite to the side on which the lumber yard was located. There was testimony that the wind was blowing strong and heavy across the tracks towards the lumber sheds. No sparks were observed by the witness as coming from the passenger engine. Later he crossed over to the cook house, on the same side of the tracks as the lumber yard. He passed within about 14 feet of where the fire was later discovered. He does not say whether everything was then all right. While at the cook house, he saw the freight train pass going north. He observed sparks coming from the smokestack of the freight engine, and going over towards the lumber yard.

Shortly thereafter the fire was discovered burning in dry lumber under a shed.

Testimony was offered by the plaintiffs below tending to negative all possible causes of the fire except that of sparks from a passing locomotive.

The road bed, as it passes the lumber yard in a northerly direction, ascends at a grade of 12.4 feet in a distance of 1,800 feet, and is also curved.

Evidence was offered and received of other fires at other times along the right of way of the defendant below.

WOLCOTT, Ch., after making the foregoing statement, delivering the opinion of the Court:

There are eighteen assignments of error. Rather than set them out in detail, it will be more convenient to dispose of them by stating the propositions of law which they raise and announcing our views thereon.

The propositions thus raised by the assignments of error are:

(1) That the court below erred in refusing to instruct the jury in accordance with the eleventh prayer of the defendant below, as follows:

"Where the presumption of negligent construction or operation arises from the fact that the fire was set by defendant's locomotives, when that presumption thus arising is repelled and rebutted, by proof of proper construction and use of appliances, and careful management and operation, the plaintiffs cannot recover without producing proof of actual negligence or want of ordinary care."

(2) That the court below erred in admitting the following testimony of the witness Henry Anderson:

"Q. In this case it has been testified that a fire started in the lumber yard of Green & Flinn, under the shed, this being the railroad and this being the shed (indicating on *Plaintiff's Exhibit No.* 6). The fire started back of these garages, according to the testimony. The distance from the nearest point to the railroad is approximately 90 feet. The testimony further is that two railroad trains passed that point, at from three-quarters of an hour to fifteen or twenty minutes before this fire was discovered; that along this railroad, at varying distances, shortly before the fire and shortly since the fire, sparks from the locomotives of these engines have set fire to dry fields. In one instance it set fire to dry leaves in a woods 30 yards away. Other witnesses testified that these sparks have gone out from the engines as high as 50 feet— some of them say as high as 70 feet; and going from the railroad, the longest

distance, from 100 to 110 yards. In this lumber yard, just outside of the shed, there were some piles of lumber—outside of the shed and between the shed and the railroad—varying from 4 to 6 to 10 feet high. In under the shed there was pine lumber, varying in size piled so that next to the railroad the ends were uneven, and that that pile of lumber in the shed was 2 to 3 feet high; that there was a space between the lumber on the outside of the shed, and inside of the shed, of from 2 to 3 feet; that the only evidence of rubbish in the shed was tar rope that had been used to tie these bundles of lumber, and when the lumber was piled the rope was cut and some of it left with the lumber; that in piling the lumber ordinary lath was used—I want to know whether, in your judgment, a spark similar to those I have described, and particularly the one that set fire to the dry leaves 30 yards away, if alive and burning when it alighted in the lumber yard, could have been responsible for a fire such as I have described in this yard?

"Mr. Huxley: I object; he presupposes that the sparks are lighted when they strike the ground.

"Mr. Hastings: I am supposing that the sparks were lighted when they struck the leaves, otherwise they would not have caught on fire.

"Mr. Huxley: I offer the further objection that there is no evidence that a live spark lighted on anything 90 feet away from the railroad right of way.

"(Objection overruled, and exception noted for defendant).

"A. I consider it highly probable."

(3) That the court below erred in admitting the testimony of the witness Petius Nygaarb, as follows:

"Q. Were the spark arresters used on the trains you operated in general use by the railroad company?

"A. Yes, sir; they had a standard spark arrester in my service.

"Mr. Huxley: I object; this witness has testified that he has been out of the railroad service since April, 1920.

"(Objection overruled, and exception noted for defendant.)

"(Witness continued) And these spark arresters would get out of order, and they required a special examination.

"Q. You say the spark arrester which was used on the trains that you operated was a standard spark arrester?

"A. Yes, sir.

"Q. Will you describe that spark arrester as to the size of the holes in it?

"(Objected to by Mr. Huxley, counsel for defendant, and objection overruled.)

"(Exception noted for defendant.)

"A. To my knowledge, the size of the mesh on the netting was a quarter inch square.

"Q. What was the netting made of?

"A. Steel wire.

"Q. And the small sparks could go through that netting?

"A. Yes sir.

"Q. Are there any other ways in which this engine could be improperly managed, so as to cause sparks?

"Mr. Huxley: I object; there is no evidence in this case of any improper management, or of any sparks coming from any of the trains that passed this lumber yard on the day of this fire.

"(Objection overruled, and exception noted for defendant.)

"A.  Yes, a fireman can fire a locomotive improperly.

"Q.  Any others?

"(Objected to by Mr. Huxley, counsel for defendant, and objection overruled.)

"(Exception noted for defendant.)

"A.  Yes.

"Q.  Will you explain all the different methods of improperly operating an engine, by the engineer, or fireman, that would cause more sparks to come from a smokestack than are necessary?

"(Objected to by Mr. Huxley, counsel for defendant, and objection overruled.)

"(Exception noted for defendant.)

"A.  There are several causes; one is an engineer that we call a pounder, and when an engine is run at full stroke, it allows the full amount of steam pressure, and this uses an unnecessary amount of fire and causes the fireman to work harder and to make a greater amount of sparks than are necessary. These things must be overcome by the engineer and the fireman working together."

(4) That the court below erred in the admission of certain evidence showing other fires.

(5) That the court below erred in charging the jury, as follows:

"Evidence of other fires along the right of way at other times, the cause for which is not accounted for except by sparks from passing locomotives, is admissible and is evidence of negligence when the engine that set the fire is not identified."

(6) That the court below erred in refusing to direct the jury to return a verdict for the defendant below.

We shall dispose of these questions in the order of their statement.

[1] 1. As to this, we need but say that a refusal to charge in the identical language of this prayer in a case similar in principle was held by the Supreme Court of this state not to constitute error. *Director General of Railroads v. Johnston et al.*, 1 W. W. Harr. (31 *Del.*) 397, 114 *Atl.* 759. No reason has been urged before us which would justify a departure from that ruling in this case.

[2] 2. The record discloses that only two objections were interposed at the trial to the testimony of Henry Anderson. He was asked an hypothetical question designed to draw from him an opinion upon the question whether lighted sparks could under the circumstances recited by the question be responsible for a fire. The defendant below objected because first, the question supposed

the sparks to be lighted when they struck the ground, and, second, that there was no evidence that a live spark lighted on anything 90 feet distant from the railroad. These were the objections urged before the trial court, and we find no error in the action of that court in overruling them; for as to the first objection it was clearly not sustainable, and as to the second objection, the record discloses that there was evidence showing that live sparks fell 90 feet distant from the railroad.

[3, 4] In this court, where the case is on a writ of error, the defendant below, in its brief, urges other objections to the reception of Anderson's testimony, such as that, first, the hypothetical question does not correctly state the testimony; second, that Anderson was not qualified as an expert; and, third, that the matter inquired about is not properly the subject of expert testimony. As to the first, the examination of the record discloses that in the one matter referred to by the defendant below at the time of the introduction of the evidence, viz., the matter of a live spark lighting on anything 90 feet away, evidence of such alleged fact had been introduced. If there were other particulars in which the defendant below conceived that the hypothetical question was not based on testimony, it should have called such particulars to the court's attention at the trial. Not having done so, it cannot object now. As to the second and third reasons urged against the testimony of Anderson, viz., that he was not qualified as an expert and the question was not properly the subject of expert testimony, it is sufficient to say that these objections were not made at the trial. Here, at the argument upon the writ of error, they are urged for the first time. They come too late. *Remington Machine Co. v. Wilmington Candy Co.*, 6 *Penn.* 288, 305, 66 *Atl.* 465.

[5, 7] 3. We find no reversible error in the admission of the testimony of the witness Petius Nygaarb. The record shows this witness to have been called to describe spark arresters and their care, and also how the quantity and size of sparks emitted by the engine may be affected by the operation of the train, and by the method of firing. The witness was a practical locomotive fireman, having had nearly nine years' experience as such, and a practical

32 Del.]        PHILA. & READING vs. GREEN & ,FLINN        87

Opinion.

locomotive engineer, having had ten years' experience as such. The fact that he had not been in the railroad service for about a year and eight months does not render him the less qualified to speak about the things his long experience as an engineer and fireman had taught him. The objection, therefore, urged at the trial, viz., that the witness had been out of the railroad service since April, 1920, was properly overruled. Nor can we find any error in the action of the court in overruling the other objections to Nygaarb's testimony, as the same are found stated in the record below. In this court, an objection is urged to the admission of that portion of Nygaarb's testimony which referred specifically to the spark arresters and their construction, as the same were installed on engines of the Pennsylvania Railroad. We fail to find any objection of this kind urged at the trial. Such being the case, it is too late to urge it here. Even if the defendant below were in a position to now insist on such objection, it would avail nothing. For if it should be conceded that it was error to permit the witness to speak of spark arresters on the Pennsylvania Railroad Company's engines, the error under the circumstances was harmless. In no event, it seems to us, could it have had any effect whatever on the result.

4. Thirteen of the assignments of error go to the point that the court erred in admitting evidence of other fires at other times.

[8] The rule applicable to the admission of testimony of other fires in such cases as this is announced in *Director General of Railroads v. Johnson et al.*, 1 W. W. Harr. (31 *Del.*) 397, 114 *Atl.* 759, as follows:

"Evidence of other fires, along the right of way at other times, the cause for which is not accounted for, except by sparks from passing locomotives, is admissible, and is evdience of negligence, when the engine that set the fire is not identified.

\*        \*        \*        \*        \*        \*        \*        \*        \*

"There seems to be a marked uniformity in the decisions of courts relating to the admission of such evidence. The rule is that testimony of other fires is admissible when the identity of the engine which set out the fire is a disputed question for the jury to determine and is not admissible when the identity of the enigne is admitted, or is so conclusively proven, as no longer to be a disputed fact for the jury."

Both counsel for the plaintiff in error and counsel for the defendant in error accept the above language as a correct statement of the law. They disagree, however, upon its application to the facts in pending case.

The defendant below contends that in the instant case the engine which caused the fire was identified, and, that being so evidence of other fires, was, therefore, not admissible. The plaintiff below contends that the engine which caused the fire was not identified and, that being so, evidence of other fires was properly admissible.

There is thus a controversy between the parties over the question of whether the engine which set the fire in this case was identified. Thus the sine qua non necessary for the admission of evidence of other fires under the rule announced in the Johnston Case is in dispute. As will be found by referring to our views announced in the disposition of proposition five, we find that under the evidence the identity of the engine which set the fire in question is in doubt. This being so, we conclude that it was proper for the court below to admit evidence of other fires.

But, granting that the engine which caused the fire in question was not identified, the defendant below contends that error was nevertheless committed in the admission of evidence of other fires, because, as it is stated on the brief of the defendant below,

"evidence as to such other fires was not only not limited to at or about the time of the fire in question, with some reasonable latitude, but in some instances was not limited at all."

A careful study of the record will disclose that the trial court, did not entertain the view that evidence of other fires was admissible without limit as to either time or place. Indeed, the contrary appears. For in his charge to the jury the Chief Justice said:

"* * * If you believe from the evidence that other fires were caused along the defendant's right of way by sparks from its engines, *near the time and place of the fire in question*, that is a circumstance from which the jury may infer negligence," etc.

And during the examination of the witness, William J. Brown, the court announced that it would confine the evidence of other

Opinion.

fires to this year and last year, meaning thereby to the years 1920 and 1921, the fire having occurred in February, 1921, about in the middle of the two years mentioned. This announcement was the equivalent of saying that evidence would be admitted of other fires occurring within a year before or a year after the fire in question.

The language in the charge to the jury, just quoted, we assume is exactly in accord with the views of the defendant below upon the point now under discussion. As to the language of the court in the ruling made during the examination of the witness Brown, we find nowhere in the record any exception to that ruling.

It is true that some witnesses testified concerning other fires in response to questions which were unlimited as to time. In some such instances, no objection whatever was interposed, and in others, though an objection was interposed, yet, when examined, the objection will be found not to refer to the question of time in any way. Under the rule laid down in *Remington Machine Co. v. Wilmington Candy Co.*, 6 *Penn.* 288, 66 *Atl.* 465, a general objection which fails to specifically state the ground on which it rests cannot avail to sustain an assignment of error based thereon. The point relied on in the court of review ought to have been fairly presented to the court below. We do not find anywhere in this record that the matter of time when the other fires occurred was ever presented to the trial court for a ruling, and, when relied upon, an exception thereto noted. In one instance the question was raised, but in no other. The instance referred to appears during the examination of the witness, William J. Brown. The part of his testimony to which we refer, is as follows:

"Q.   Did you ever have a fire on your place, caused by the sparks from a locomotive engine of the Philadelphia & Reading Railway Company, near the time Green & Flinn's fire occurred?

"Mr. Huxley: I object on the same ground: and also he has already had six witnesses on the same point.

"Pennewill, C. J.: We think that rule does not apply. We overrule the objection.

"(Exception noted for defendant.)

"A.   Yes, sir; we have had them out there.

"Q.   How many have you had?

"A.   We have them, more or less, every year.

"Q. Did you have any this year?
"A. Yes, sir; had one in August.
"Q. When did you have one before that?
"A. I couldn't just say.
"Q. Which of the fires to which you have referred occurred before last August?
"(Objected to by Mr. Huxley, counsel for defendant, and question withdrawn.)
"Q. When did you have a fire in 1920, that occurred and was caused by the sparks of a locomotive engine of the Philadelphia & Reading Railway Company?
"A. We had them, but I couldn't just tell you the day.
"Q. No more than one in 1920?
"A. Yes, sir.
"Q. Did you have any of that kind of fires in 1919?
"Mr. Huxley: I object; it is too far away.
"Pennewill, C. J.: We will confine it to this year and last year.
"(Question withdrawn.)
"Q. Did you ever observe sparks coming from the engines of the Philadelphia & Reading Railway Company, at a point or points near the yard of Green & Flinn?
"Mr. Huxley: Same objection.
"(Objection overruled, and exception noted for defendant.)
"A. Yes, sir; I have.
"Q. When?
"A. You can often see them if you watch the train.
"Q. Did you observe them near February 26, 1921?
"A. Yes, sir; in January and the first of February."

Here is one instance where the question put to the witness was unlimited as to time, and was objected to on that ground. The court, however, had just stated that testimony must be limited to 1920 and 1921, and no exception was noted to this. The answer of the witness, it will appear, referred to fires in January and the first of February, 1921. The fire complained about having occurred February 26, 1921, it is manifest that if the question were objectionable, the answer rendered it harmless.

[9] As before stated, whenever a question as to other fires was objected to, except in the one instance just commented upon, the matter of time was not referred to; and in still other instances the questions were allowed to pass without objections of any kind whatever. Such being the state of the record, we find no error in this particular. We may say, further, that while there are instances of questions and answers regarding other fires, which make no reference to the time of occurrence, we would hardly feel justified in assuming that if, either by the question in chief exam-

ination or by questions in cross-examination, the time of the occurrence had been fixed, it would have turned out to be a time unreasonably distant. It would be just as reasonable to assume that the answer would have brought the other fires within a time reasonably near the one complained of.

[10] The defendant below took no exception to the ruling of the court to the effect that evidence of other fires might be admitted if confined to the years 1920 and 1921. This being so, it may be said that we are not called upon to consider whether such an extension of the time within which other fires might be shown was unreasonable. If we were called upon to consider this question, we would hold that such an extension of time was not, under the circumstances of this case, unreasonable. The inference which the law permits the jury to draw from the circumstance that other fires occur is that the setting of other fires along a right of way of a railroad may, in a circumstantial manner, indicate what might be called a habit on the part of passing locomotives to set fires, and, if such habit is found, it may be probable that not only was the fire in question thus set by a passing locomotive, but that such setting was also due to negligence. This method of proof, while not satisfactory in many ways, is nevertheless accepted *ex necessitate* as the best which the nature of the case admits of. When the engine that set the fire cannot be identified, it is manifest that the more frequent the other fires are shown to be, the stronger is the presumption which may flow from their occurrence. If it were sought to show only one other fire, and such single fire had occurred as long as one year before or after the fire in question, then it may well be that such occurrence would be too far detached from the one complained of, to be of probative significance. But where, as here, the other fires are shown to be numerous and are stretched out over the period of a year, extending down to the date of the fire in question, we think it is not unreasonable to allow the plaintiff that length of time within which to show that other fires occurred. The defendant below cites *Henderson et, al., v. Phila., etc. R. R. Co.*, 144 *Pa.* 461, 22 *Atl.* 851, 16 *L. R. A.* 299, 27 *Am. St. Rep.* 652, as holding that it is error to admit testimony of other

fires frequently occurring during a period of six months previous to the fire complained of. That case does so hold. We are not disposed, however, where the circumstances are such as appear in the record before us, to be quite so strict in defining the latitude of proof. The limit of one year before and after is not so great as either to be unreasonable or to render the proof impracticable. The defendant below cites also, in this connection, the case of *Shelly v. Phila. & Reading Ry.*, 211 *Pa.* 160, 60 *Atl.* 581, and relies upon it as identical with the case at bar. We do not so regard it. In that case the court held that the engine was identified, and the only reference to the point now under consideration is that in the trial court the judge observed that two weeks would not be an unusual time within which the plaintiff might show other fires to have occurred, provided the engine which caused them was the same engine as caused the fire in question. From this statement, it is plain that the Shelly Case has no bearing here.

[11] It is also urged that error was committed in the admission of evidence of other fires because it was not shown that the engines causing such other fires were equipped similarly to the two engines which passed the lumber yard on the evening of the conflagration. If a showing that one of two engines must have caused the fire constitutes in law an identification of the engine that actually did cause it, then there might be some substance to this contention. But holding as we do (see hereafter) that such a showing does not constitute an identification of the engine, the contention, if there be any strength otherwise in it, can have no force here.

[12] 5. Under this head the following charge to the jury is objected to:

"Evidence of other fires along the right of way at other times, the cause for which is not accounted for except by sparks from passing locomotives, is admissible and is evidence of negligence when the engine that set the fire is not identified."

The contention made in this connection is that if the fire was set by an engine of the defendant below, the evidence identified the particular engine that set it, and that being so, it was not per-

missible for the jury to consider evidence of other fires. This contention, therefore, raises the question of whether the offending engine is identified.

The defendant below argues that the declarations are so drawn that the defendant is notified by the pleadings that the plaintiffs propose to identify a particular engine as connected with the negligence complained of; and this being so, it was not permissible to allow the plaintiffs below to prove, or to rely upon, a case of an unidentified engine. We cannot agree with this contention. The declarations charged in their various counts negligence either in the equipment or in the operation of "a" or "one" of its (defendant's) locomotives. The plaintiff in error takes the view that describing the locomotives in such manner is tantamount to a statement by the pleader that one certain locomotive is referred to and that proof will be offered identifying it. It is a sufficient answer to this contention to observe that the article "a" and the word "one", whether used as an adjective or pronoun, are generally regarded as connoting the idea of indefiniteness. And so we regard their use in the counts of the declaration filed in the court below. The plaintiffs below, by the use of these words, did not undertake to confine themselves to a particular and identified locomotive.

But, it is urged, the engine that caused the fire, if any did cause it, was the freight engine going north. The proof is that a passenger train went south at about 5:58 p. m. Whether it was emitting sparks as it passed the lumber yard is not known. No witness speaks upon the point. Two witnesses saw it, but neither was interrogated upon the question of emission of sparks. After this train passed, the watchman walked within 14 feet of the place where the fire was later discovered. He did not say whether he saw any fire at that time. Another witness, after this train passed and before the freight passed, rode in an automobile past the lumber yard, and so far as he saw everything was "O. K." At 6:12 or 6:18 p. m. a freight train went north and the watchman saw sparks emitted from the smokestack of its locomotive and going over the tracks towards the lumber yard. This being the state of the

evidence, we think that it cannot be said that the freight engine is positively shown to have caused the fire. Simply because no witness was produced who testified to seeing sparks coming from the passenger engine does not justify the conclusion that no sparks were emitted. While no witness testified that sparks were emitted, none testified that they were not. Nor do the facts that the watchman walked within 14 feet of where the fire was later discovered, after the passenger train had passed and before the freight train came along and did not testify to seeing any fire, and that a witness, by his observation from a passing automobile, thought everything was "O. K." in the yard after the passenger train had passed, necessarily show that the passenger train could not have caused the fire. For if a spark had then been lodged in the inflammable material, it may well have lain there smoldering and not have been observable to a person passing by so soon after it fell. The jury was entitled to take this view, if in its judgment such view seemed reasonable. We cannot say that the evidence was such as not to permit it.

It, therefore, appears that the evidence left in doubt which of these two engines, if either, threw out the spark or sparks which occasioned the fire. That the evidence created such doubt was not only the view of the plaintiffs below, but it was apparently also the view of the defendant below. For the defendant below introduced proof tending to show, not only that the freight engine was properly equipped and operated, but that the passenger engine was also. The case, therefore, was tried by both sides upon the theory that either of these two engines may have caused the fire.

[13] A further contention is made by the defendant below in connection with this branch of the case. This contention, while not urged on the brief, was pressed at the argument. It is, that if it is shown, as it was in this case, that the fire, if caused by any engine, must have been caused by one of two, then there is an identification of the engine and the rule which admits evidence of other fires at other times is not then applicable.

We are constrained to disagree with this contention. If it

be held that evidence which narrows the offending engine to one of two constitutes an identification of the engine, why may it not with equal reason be also held that identification is complete when it appears that one of three caused the fire? And if so, why not one of four, and so on? We do not know where the line could be drawn. Only an arbitrary boundary could be set. Certainly reason would be at a loss to fix it. But a yet greater difficulty would be presented, if we were to adopt the view that identification is made when the engine at fault is narrowed to one of two. For it will be remembered that the effect of identifying the engine is to confine the proof to that engine and require the plaintiff to show negligence in either its construction, equipment or operation. It seems to be recognized by the courts, as it was by the court below in this case, that a locomotive engine, fired by coal even though properly constructed and operated, and equipped with spark arresters of approved design, may, nevertheless, in spite of all safeguards, emit sparks and set fires without occasioning liability on the part of the operating railroad. Hence it is that if the engine is identified, some defect in that particular engine, or some negligence in its operation, must be shown; other fires and other emissions of sparks from which the jury may infer negligence are not, in that case, permitted to be shown.

Such are the consequences upon the proof of the case, which an identification of the engine entails. Now, if it is conceded that proof that one of two engines must have set the fire constitutes an identification of the engine, what in reason must be the result? Manifestly it must be that the plaintiff will be driven to prove that there was negligence in either the equipment or management of both of the engines. For if he should show that only one of them was at fault, and, at the same time, he cannot show that that one set the fire, he will be confronted with the answer that he has not made out his case, because *non constat* that the other one, which may have caused it, was properly equipped and carefully operated —in which event there would be no liability. Hence he would be driven to show negligence of some kind with respect to both engines in order to establish his case. This would be highly unreasonable.

Upon the question of what constitutes an identification of the offending engine, the defendant below cites *Shelly v. Phila. & Reading Ry. Co., supra.* It is there held that the enigne, in order to be identified, does not need to be known by number, size or shape from all other engines; it is sufficient if it is pointed out as the engine that caused the injury, and was known as the engine that drew a train passing nightly on a fixed schedule. Such facts are not present in the instant case. If it be conceded that the engine drawing the freight train was the only engine which could have caused the fire here complained of (a concession which we have before said is not supported by the evidence), yet the Shelly Case might still be distinguishable, for the evidence shows that the engine which drew the freight on the day of the fire was not the engine that ran regularly on that schedule. It was an extra. This circumstance, in the view of the court in *Creasy v. Penna. R. R. Co.,* 57 *Pa. Super. Ct.* 149, would serve to take the case out of the identification rule laid down in the Shelly Case. But entertaining the views we do to the effect that the evidence leaves in doubt, which of the two engines caused the fire, the freight or the passenger, it is not necessary for us to consider either the rule defined in the Shelly Case, or the modification of it suggested by the court in the case of *Creasy v. Penna. R. R. Co., supra.*

Our conclusion, therefore, with respect to the point now under consideration is that there was no identification of the engine in this case, and the court committed no error in charging the jury, as follows:

"Evidence of other fires along the right of way at other times, the cause for which is not accounted for except by sparks from passing locomotives, is admissible and is evidence of negligence when the engine that set the fire is not identified."

[14] 6. The last contention made by the plaintiff in error is that the court erred in refusing to instruct the jury to return a verdict for the defèndant. In support of this contention it is urged first, that there was no evidence proving, or tending to prove, how or in what manner the fire was started, and second, there was no evidence showing negligence in the equipment or operation of the engines drawing the passenger and freight trains.

This court held in *Director General of Railroads v. Johnston*, 1 W. W. Harr. (31 *Del.*) 397, 114 *Atl.* 759, that the fact that fire was caused by a spark from a passing locomotive may be proved by circumstantial evidence. We think there are sufficient facts in the evidence to justify the jury in believing that the fire in question was caused by a spark from one of the engines of the defendant below. The passng of two trains, one of which was clearly seen to be emitting sparks, and the other of which may have been emitting them, the discovery of the fire shortly thereafter, the frequency with which sparks from the engines of the defendant below had at other times set fires in the vicinity of the *locus in quo*, that all other probable causes to which the origin of the fire could be attributed were eliminated, are circumstances from which the jury might reasonably infer that the fire in question was caused by sparks from a passing locomotive.

[15] Upon the second point made in support of the contention that the court erred in refusing to direct a verdict for the defendant, namely, that there was no evidence showing negligence in the equipment or operation of the engines drawing the passenger and freight trains, it is sufficient to say that, having concluded that there was no identification of either of them as the cause of the fire, it was not incumbent upon the plaintiffs below to confine their proof of negligence to evidence having to do solely with these two engines, their condition and management. Such proof could be made out circumstantially by evidence of other fires, set on other occasions, and the emissions nearly every night of sparks large and small by the locomotives of the defendant below as they passed the lumber yard near the time of the fire in question. Furthermore, the distance from the place where the fire was discovered to the railroad is about 90 feet. This is a circumstance in the case. The jury taking into consideration this circumstance, along with the others, may have legitimately drawn the inference that if an inflammable spark travels such distance it must have been due to negligence of the defendant below in either the equipment or operation of the engine from which it was emitted. There is also testimony to the effect that the pas-

senger engine, being late, was thrown wide open. Of course, the defendant below produced testimony, which tended to overcome the damaging effect of all the circumstances detailed by the witnesses for the plaintiffs. But this presented only a problem of conflict in the evidence which it was the jury's province to pass upon. There was enough in the evidence to submit the case to the jury; and we accordingly find no error in the refusal of the court below to direct verdict for the defendant below.

The judgment of the court below is affirmed.